IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15–cv–01295–PAB–KMT

DELMART E. J. M. VREELAND, II,

      Plaintiff,

v.

INVESTIGATOR RICHARD WREN, Office of the Inspector General, CDOC,
INVESTIGATOR SANCHEZ, Office of the Inspector General, CDOC
SERGEANT J. HANSEN, Fremont Correctional Facility, CDOC,
PROPERTY OFFICER MCCLEAN, Fremont Correctional Facility, CDOC,
OFFICER BUSTAMANTE, Fremont Correctional Facility, CDOC,
GARY CASSIO, CDOC,
SUPERVISOR OR DIRECTOR OF THE CDOC INMATE CANTEEN SERVICES OR
INDUSTRIES, and
UNION SUPPLY MEDIA/UNION SUPPLY GROUP BOARD OF DIRECTORS AND SHARE
HOLDERS, Rancho Dominguez, California,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendants Wren, Sanchez, Hansen, McClean,

Bustamante, and Cassio's "Motion to Dismiss" (Doc. No. 25 [Mot.], filed December 18, 2015).

Plaintiff filed his response on February 18, 2016.  (Doc. No. 36 [Resp.].)  Defendants did not file

a reply.

## STATEMENT OF THE CASE

      At all times relevant to Plaintiff's claims, he was an inmate housed at the Fremont

Correctional Facility ("FCF") in the Colorado Department of Corrections ("CDOC").  Plaintiff

asserts six claims pursuant to 42 U.S.C. § 1983 and state tort claims.[1]  (*See* Doc. No. 16

["Compl."].)

In Claim One, Plaintiff alleges his right to access the courts was violated by Defendants

Wren, Sanchez and Casio.  Plaintiff asserts Defendant Wren seized Plaintiff's electronic storage

device, a "UTAB7" tablet that contained all of his legal materials for various state and federal

cases.  (*See id.* at 12.)  Plaintiff notified Defendants Wren and Sanchez that he could not litigate

his pending cases and requested the return of his tablet, or that he or someone from the CDOC be

allowed to print out the legal documents from the device at Plaintiff's expense.  (*Id.* at 14.)

Plaintiff alleges his requests were denied by Defendants Wren, Sanchez, and Cassio, who

informed Plaintiff that the tablet was evidence in a criminal investigation.  (*Id.*)  Plaintiff

contends he was unable to access the necessary information stored on his tablet and thus was

unable to timely file pleadings in state and federal court cases and was forced to pay tens of

thousands of dollars to retain lawyers and to reproduce files, pleadings, exhibits and other

evidence.  (*See id.* at 15–19.)

Claim Two is limited to the portion of the claim pertaining to the reading of privileged

communications as it relates to Plaintiff's denial of access to courts claim.  (*See* Doc. No. 17 at 6,

11.)  Plaintiff alleges Defendants Wren, Sanchez, and Cassio read letters on Plaintiff's tablet that

were to and from Plaintiff's attorneys of record in his Michigan and Florida cases.  (*See* Compl.

at 20.)  Plaintiff contends the defendants then gave defendants in the other cases the information,

giving them an unfair advantage in their litigation against him.  (*Id.* at 11.)

---

[1] Plaintiff originally asserted eleven claims (*see* Compl.), but Senior District Judge Lewis T. Babcock dismissed all claims except Claims One through Four, Seven and Eleven (*see* Doc. No. 17).

In Claim Three, Plaintiff asserts a state law claim for loss and destruction of property against Defendants Bustamante, Hansen, and McClean. (*Id.* at 21.) Plaintiff alleges on February 4, 2015, he was taken from his cell at FCF and placed into punitive segregation. (*Id.*) Plaintiff alleges Defendant Bustamante was ordered to pack up Plaintiff's personal property. (*Id.*) On February 6, 2015, Plaintiff received a signed inmate property sheet from the Property Sergeant, Defendant Hansen, who attested that he performed an inventory on and accounted for all of Plaintiff's property. (*Id.*) On February 13, 2015, Defendant McClean went through Plaintiff's property for a transport from FCF to Colorado Territorial Correctional Facility (CTCF). (*Id.*) Although required by CDOC regulations, and despite Plaintiff's advising Defendant McClean that "his visual inspection revealed property was in fact mis[s]ing," Defendant McClean allegedly refused to conduct an inventory. (*Id.*) As a result, Plaintiff lost two of Plaintiff's legal manuals valued at $1,320.00. (*Id.* at 22.)

In Claim Four, Plaintiff asserts a state law conversion claim regarding the seizure of Plaintiff's tablet by Defendants Wren, Sanchez, and Cassio. (*Id.*) Plaintiff alleges the defendants converted Plaintiff's property to their own personal use without Plaintiff's permission or due process of law. (*Id.*)

In Claim Seven, Plaintiff asserts claims under federal and state laws for Defendant Cassio's allegedly false advertising of the tablet to Plaintiff. (*Id. at* 24.) Plaintiff alleges Defendant Cassio "in conspiracy and in complicity" with Defendants Supervisor or Director of the Colorado Department of Corrections Inmate Canteen Services or Industries ("Defendant Canteen Director") and Union Supply Media/Union Supply Group Board of Directors and Share

3

Holders ("Union Supply")[2], advertised "the sale of the UTAB7 to the general inmate population, with the ability to purchase music, games, movies, tv shows, and a windows keyboard." (*Id.*) After Plaintiff purchased the tablet and accessories, he learned that software, games, programs and music were stolen or pirated. (*Id.*) Further, the keyboard that was advertised as being a "windows" keyboard was a "knockoff two-dollar piece of trash" with no actual keyboard. (*Id.*) Plaintiff later learned that the e-books, games, movies and television shows were never going to be made available, despite being advertised as available for purchase. (*Id.*)

In Claim Eleven, Plaintiff asserts a retaliation claim, alleging the real reason Plaintiff's tablet was seized by Defendants Wren, Sanchez, and Cassio was to retaliate against Plaintiff for filing lawsuits. (*Id.* at 26.) Plaintiff claims on October 28, 2014, the Defendants discovered the legal materials and grievances stored on Plaintiff's tablet. (*Id.*) After Plaintiff grieved the initial seizure of his device, Defendants Wren, Sanchez, and Cassio "created a plan" to deny Plaintiff access to his legal materials to stop Plaintiff's litigation. (*Id.*)

Plaintiff seeks punitive damages in excess of $350,000, compensatory damages in excess of $250,000, injunctive relief in the form of an order demanding the immediate return of his tablet, and punitive damages in excess of $500,000 for all state and federal claims.[3] (Compl. at 29.)

---

[2] Defendants Union Supply and Canteen Director have not been served with the Complaint. (*See* Doc. No. 40 [Order Show Cause].)

[3] Plaintiff also seeks $10,000,000 in punitive damages from Defendant Union Supply "to be split between all inmates who purchased the UTAB7." However, Plaintiff lacks standing to bring constitutional claims on behalf of other prisoners. *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). To the extent Plaintiff wishes to assert class action tort claims, he has not moved to certify a class action nor has he satisfied the prerequisites of Federal Rule of Civil Procedure 23(a). Finally, although plaintiff has the right to appear *pro se* on his own behalf, he may not represent another *pro se* plaintiff in federal court. *See* 28 U.S.C. § 1654; *United States v.*

## STANDARDS OF REVIEW

### A.      Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

---

*Grismore*, 546 F.2d 844 (10th Cir.1976).  Thus, the court will not address any claims Plaintiff attempts to assert on behalf of other plaintiffs.

### B.      Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

C.     **Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### A.    *Eleventh Amendment Immunity*

To the extent Plaintiff sues Defendants for damages in their official capacities, Defendants move to dismiss the claims as barred by the Eleventh Amendment. (Mot. at 4–5.) The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Suits against state officials in their official capacity should be treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no

different from a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).  Moreover, an action under 42 U.S.C. § 1983 may only be brought against a person.  Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70–71.

Plaintiff's claims for monetary relief against the defendants in their official capacities constitute claims against the Colorado Department of Corrections.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").  Therefore, Plaintiff's official-capacity claims for monetary relief against the defendants are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction.  *See id.*

**B.      Access to Courts Claims**

Plaintiff asserts two First Amendment denial of access to courts claims due to the alleged confiscation of his tablet on February 4, 2015.  (*See* Compl. at 12–20.)  Defendants move to dismiss both claims.  (Mot. at 6–12.)

The right of access to the courts is a fundamental constitutional right.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  An inmate alleging denial of access to the courts must allege an actual injury.  *Lewis*, 518 U.S. at 349.  To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim."  518 U.S. at 356;  *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing *Lewis*, 518 U.S. at 351.)

### 1.      Claim One

In Claim One, Plaintiff alleges Defendants Wren, Sanchez, and Cassio illegally seized his tablet, which contained all of his legal materials for cases in this Court and three state court cases, which hindered his ability to proceed with legal matters.  (Compl at 12.)

#### a.      *Vreeland v. McDonald and Vreeland v. French*

Plaintiff alleges he was prevented from filing the *McDonald* case, an illegal seizure of property and retaliation case (Compl. at 14), and the *French* case, a "case against a law enforcement office who planted evidence on Plaintiff in order to convict Plaintiff in the Colorado state court criminal case 04cr706" (*id.* at 12, 14–15).  Plaintiff alleges he was unable to file these cases because the statutes of limitations expired in April 2015 and May 2015, respectively.  (*Id.* at 16.)

Defendants argue that Plaintiff had more than adequate time to file these matters within the statute of limitations.  The court agrees.  According to the allegations in Plaintiff's complaint, he had two and three months, respectively, to file complaints that complied with Colorado's rule requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See* C.R.C.P. 8(a)(2).  Plaintiff states has sent "about 120 boxes with about 10,000 documents in each box" to a storage facility in Michigan.  (Compl. at 17.)  Plaintiff does not allege the defendants kept him from retrieving any of the necessary documents to file the complaints within the remaining time under the statutes of limitations.  Plaintiff also fails to explain why he could not have filed the complaints with his own knowledge of the events and later, if he deemed necessary, amended the complaint as a matter of course or after seeking leave of the court.  *See* C.R.C.P. 15(a).

As Plaintiff fails to show that "the denial of legal resources hindered [his] efforts to pursue a nonfrivolous claim," this portion of Claim One should be dismissed.

### b.    *Vreeland v. Zupan (formerly Vreeland v. Archuleta), 14–cv–02175–PAB*

The *Zupan* case is Plaintiff's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  Plaintiff alleges he was "totally impede[d] from filing anything" with respect to a show cause order issued by the *Zupan* court.  (Compl. at 18.)  Plaintiff states as a result he was "forced" to retain counsel and borrow and pay out over $60,000 in the *Zupan* matter.  (*Id.* at 18–19.)  The docket for the *Zupan* case shows that Plaintiff, proceeding *pro se*, filed a 411-page Application on August 6, 2014.  (*See* 14–cv–02175–PAB, Doc. No. 1.)[4]  After the Court issued its Order to Show Cause, and ***prior*** to the confiscation of his tablet, Plaintiff filed a "Motion for Enlargement of Time in which to Respond to the Court's January 7, 2015 Order to Show Cause," seeking additional time to respond in order to obtain counsel—and ***not*** due to the alleged confiscation of his tablet.  (*Id.*, Doc. No. 24.)  Counsel entered their appearances on Plaintiff's behalf on March 4, 2015, and timely responded to the Order to Show Cause.  (*Id.*, Doc. No. 32.)  Significantly, Plaintiff's counsel have not argued or suggested, in any of the documents they have filed, that Plaintiff's inability to access the documents on his tablet has hindered their ability to assist Plaintiff's pursuit of the habeas corpus claims.  (*See id.*, Doc. Nos. 32, 37, 42, 45, 53, 59, 65, 67, 68.)

---

[4] A district court may consider documents attached to a complaint, or referred to and/or relied upon in a complaint if not attached, when evaluating a motion to dismiss under Rule 12(b)(6).  *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (exhibits attached to complaint, all materials referenced in complaint, and materials subject to judicial notice, including materials in a court file, are properly considered when evaluating a motion to dismiss under Rule 12(b)(6)).  Thus, documents from Plaintiff's other cases is in this Court are properly considered within the context of Defendants' motion.

This Court's records belie Plaintiff's contention that his ability to pursue his habeas corpus case has been hindered by the alleged confiscation of his tablet. As such, this portion of Plaintiff's Claim One should be dismissed.

### c.    *Vreeland v. Griggs*, 12–cv–01921–PAB–KMT

With respect to the *Griggs* case, Plaintiff alleges he could not effectively litigate the case, including introducing newly obtained evidence. (*See* Compl. at 17.) The Court's docket in *Griggs* matter contradicts Plaintiff's allegations. For instance, the first document filed by Plaintiff in *Griggs* after the alleged confiscation of his tablet was a reply in support of an objection to a ruling on a motion to compel. (12–cv–01921–PAB–KMT, Doc. No. 170.) Plaintiff did not mention anything about the tablet. (*Id.*) The next document filed by Plaintiff was a motion to compel and for sanctions against the defendant and his counsel; however the motion, again, did not mention the confiscation of Plaintiff's tablet. (*Id.*, Doc. No. 174.) Between December 2, 2014, and December 2, 2015, Plaintiff filed several motions for extensions of time to respond to the Defendant's motion for summary judgment, all of which were granted and none of which mentioned that Plaintiff required the extension because of the confiscation of his tablet. (*See id.*, Doc. Nos. 176, 179, 183, 185, 193, 195.) On December 18, 2014, Plaintiff filed an eight-page motion for the appointment of counsel in which he did not mention the confiscation of the tablet and his inability to litigate the case due to his inability to access documents on the tablet as one of the reasons counsel should be appointed. (*See id.*, Doc. No. 181.) On February 9, 2015, Plaintiff filed a reply to the defendant's motion for summary judgment, in which he failed to mention the confiscation of the tablet. (*See id.*, Doc. No. 197.) Plaintiff later moved to supplement his response to the motion for summary judgment, but the

motion was not related to any materials allegedly contained on the tablet, but rather documents he had recently obtained and had never seen before.  (*See id.*, Doc. No. 220.)  Plaintiff's motion to supplement his response was denied.  (*Id.*, Doc. No. 239.)  On September 30, 2015, District Judge Philip A. Brimmer granted summary judgment in favor of the defendant (*See id.*, Doc. No. 245), but the dismissal had nothing to do with Plaintiff's alleged inability to access documents on his tablet.

Again, the Court records show that Plaintiff was not hindered in his ability to pursue the *Griggs* case by the alleged confiscation of his tablet.  As such, this portion of Plaintiff's Claim One should be dismissed.

### c.      *Vreeland v. Schwartz, 13–cv–03515–PAB–KMT*

With regard to the *Schwartz* case, Plaintiff alleges he typed all relevant information from the documents into his tablet and then sent the originals home to Michigan.  (Compl. at 17.)  Plaintiff states he "has about 120 boxes with about 10,000 documents in each box, located in a storgae [sic] handled by his family."  (*Id.*)  Plaintiff complains that he had to file an amended complaint from memory after the matter was remanded by the Tenth Circuit Court of Appeals.  (*Id.*)

The docket in the *Schwartz* case shows that on June 19, 2015, after remand from the Tenth Circuit, Senior District Judge Lewis T. Babcock ordered Plaintiff to file an amended complaint within thirty days.  (13–cv–03515–PAB–KMT, Doc. No. 29.)  On July 14, 2015, Plaintiff filed a motion for extension of time to file the amended complaint in which he did not mention the confiscation of his tablet or any problem with drafting a complaint due to his inability to access any relevant documents or notes.  (*Id.*, Doc. No. 31.)  The motion was granted

(*id.*, Doc. No. 32), and on August 6, 2015, Plaintiff filed a 31-page amended complaint (*id.*, Doc.

No. 35.)

Again, the Court record belies Plaintiff's allegations that he was hindered in his attempt

to draft a complaint due to the inability to access his tablet.  As such, this portion of Plaintiff's

Claim One should be dismissed.

### d.      *Vreeland v. Royal*

Finally, Plaintiff alleges he was prevented from filing a case against an attorney in

Michigan, John F. Royal, apparently for legal malpractice for his failure to file a motion to

withdraw a plea in Plaintiff's Michigan criminal case.  (*See* Compl. at 16.)

To assert a valid access to courts claim, the action must be either attempt to pursue a

direct appeal from a conviction for which the plaintiff was incarcerated or an action to vindicate

basic constitutional rights.  *See Lewis*, 518 U.S. at 354–55 (citing cases).

> In other words, *Bounds* [*v. Smith*, 430 U.S. 817 (1977)] does not guarantee
> inmates the wherewithal to transform themselves into litigating engines capable of
> filing everything from shareholder derivative actions to slip-and-fall claims.  The
> tools it requires to be provided are those that the inmates need in order to attack
> their sentences, directly or collaterally, and in order to challenge the conditions of
> their confinement.  Impairment of any other litigating capacity is simply one of
> the incidental (and perfectly constitutional) consequences of conviction and
> incarceration.

Plaintiff's Claim against Mr. Royal is neither a direct appeal from a conviction nor a

constitutional claim.  As such, Plaintiff fails to state a denial of access to courts claim as it relates

to Mr. Royal, and this portion of Claim One should be dismissed.

### 2.      *Claim Two*

In Claim Two, Plaintiff alleges Defendants Wren, Sanchez, and Cassio read private

letters to and from his counsel that were contained on his tablet.  (*See* Compl. at 7, 20.)  As

previously noted, Claim Two is limited to the portion of the claim pertaining to the reading of privileged communications as it relates to Plaintiff's denial of access to courts claim. (*See* Doc. No. 17 at 6, 11.)

In the Nature of the Case section of Plaintiff's Complaint, he alleges the defendants "gave the Defendants in the other cases Plaintiff is [a] Plaintiff in, an unfair advantage over Plaintiff by releasing the work product informations [sic] to those Defendants/Respondents, and caused impediments to access to the courts so severe that Plaintiff was left with no ability to litigate any cases at all." (Compl. at 11.)  In his response, Plaintiff clarifies his belief that the defendants caused him injury because they "gave the substance of the communications to the Colorado Attorney General's Office and attorney(s) working on cases where there is CDOC defendants, that gave the Attorney General's Office, and their clients, Plaintiff's opponents, an unfair advantage over Plaintiff in his litigation." (Resp. at 15.)  However, in Claim Two, Plaintiff only alleges the tablet contained "private letters to and from lawyers of record cases 04cr706, 08CA2468, Michigan and Florida case." (Compl. at 20.)

Plaintiff does not allege the tablet contained any privileged correspondence related to any case asserted against the CDOC or its employees and does not allege how the defendants' allegedly reading privileged communications from his 2004 and 2008 cases in Michigan and Florida could have hindered his attempts ,or helped other CDOC defendants' attempts, to litigate any other case.  Moreover, Plaintiff's complaint does not contain "factual content that allows the court to draw the reasonable inference", *Iqbal*, 556 U.S. at 678, provided any information from the privileged correspondence to defendants in other cases.

Plaintiff has failed to show an injury sufficient to assert an access to courts claim, and Claim Two should be dismissed.

## C.     Retaliation

Defendants argue Plaintiff fails to state a cognizable claim for retaliation.  (Mot. at 12–13.)  To state a retaliation claim, a plaintiff must allege

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).  In this context, the Supreme Court has defined "injury" as a hindrance in a prisoner plaintiff's efforts to pursue a legal claim.  *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Plaintiff alleges that "the real reason his UTAB7 and all legal materials was [sic] illegally seized was done for purposes of retaliation and to try and to put a stop to Plaintiff's multiple non-frivolous federal court civil complaints against CDOC and its interested parties."  (Compl. at 26.) Plaintiff alleges that Defendants Wren, Sanchez, and Cassio "discovered by way of the initial illegal search of the UTAB7 . . . that this Plaintiff had tens of thousands of pages of civil litigation, proofs [sic], grievances, and complaints against CDOC employees and the Inspector General's Office," and they "created a plan to retaliate and seize and to deny Plaintiff access to his legal materials in order to try and stop Plaintiff's litigations."  (*Id.*)

However, Plaintiff has pleaded no facts to support his conclusory allegations of a retaliatory motive.  "An inmate must allege more than his personal belief that he is the victim of retaliation."  *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  Plaintiff has failed to do so,

and his Claim Eleven for retaliation against Defendants Wren, Sanchez, and Cassio should be

dismissed.  *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based.")

### D.        *State Tort Claims*

Defendants argue under the Colorado Governmental Immunity Act they are immune

from liability in their official and individual capacities for the state tort claims raised in Claims

Three, Four, and Seven.

The Colorado Governmental Immunity Act ("CGIA") provides:

> A public employee shall be immune from liability in any claim of injury, . . .
> which lies in tort or could lie in tort regardless of whether that may be the type of
> action or the form of relief chosen by a claimant and which arises out of an act or
> omission of such employee occurring during the performance of his duties and
> within the scope of his employment unless the act or omission causing such injury
> was willful and wanton.

Colo. Rev. Stat. § 24–10–118(2)(a).  *See also Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647,

652 (Colo. App. 2006) (with regard to claims against a public employee, if there is no waiver of

immunity, then a plaintiff must allege willful and wanton conduct to proceed on his claims

because an employee who is sued for willful and wanton conduct does not enjoy immunity under

the CGIA) (citation omitted); *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) ("A public

employee is immune from all claims that lie or could lie in tort, unless the claim falls within one

of the six limited areas for which immunity has been waived or unless the act or omission

causing the injury was willful and wanton.") (citing Colo. Rev. Stat. § 24–10–118(2)).

"Failure to plead the factual basis of an allegation that an act or omission of a public

employee was willful and wanton shall result in dismissal of the claim for failure to state a claim

upon which relief can be granted."  Colo. Rev. Stat. § 24–10–110(5)(b).  *See also Peterson v.*

*Arapahoe Cnty. Sheriff*, 72 P.3d 440, 444 (Colo. App. 2003) ("In any action alleging willful and wanton conduct of a public employee, the specific factual basis of such allegations shall be stated in the complaint.  The failure to plead the factual basis shall result in dismissal of the claim for failure to state a claim upon which relief can be granted.") (citations omitted).  "Whether a plaintiff has pleaded sufficient facts to state a claim based upon willful and wanton conduct is to be determined by the court."  *Barham v. Scalia*, 928 P.2d 1381, 1385 (Colo. App. 1996).

For purposes of the CGIA, a person engages in "willful and wanton" conduct when that person "purposefully pursued a course of action or inaction that he or she considered would probably result in harm" to the plaintiff.  *Castaldo v. Stone*, 192 F.Supp.2d 1124, 1141 (D. Colo. 2001). The Colorado Supreme Court has also considered the meaning of "willful and wanton" in *Pettingell v. Moede*:

> Willful action means voluntary; by choice; intentional; purposeful.  Wantoness signifies an even higher degree of culpability in that it is wholly disregardful of the rights, feelings and safety of others.  It may, at times, even imply an element of evil.  One may be said to be guilty of "wanton and willful disregard" when he is conscious of his misconduct, and although having no intent to injure any one, from his knowledge of surrounding circumstances and existing conditions is aware that his conduct in the natural sequence of events will probably result in injury to his guest, and is unconcerned over the possibility of such result.

271 P.2d 1038, 1042 (Colo. 1954) (interpreting Colorado's automobile guest statute).

In Claim Three, Plaintiff asserts Defendant Bustamante was ordered to pack up his property after Plaintiff was taken to segregation and informed Plaintiff all of his belongings had been packed and accounted for.  (Compl. at 21.)  Plaintiff alleges Defendant Hansen performed an inventory of Plaintiff's property as required by CDOC regulations, and Defendant Hansen attested he had accounted for all of Plaintiff's property.  (*Id.*)  Plaintiff asserts Defendant McClean was responsible for the packing of Plaintiff's property for his transfer from CTCF from

FCF.  (*Id.*)  Plaintiff alleges Defendant McClean refused to allow Plaintiff to complete a property inventory when he informed her that he thought some of his property was missing, and then she then refused to do one herself as CDOC regulations require.  (*Id.*)

In Claim Four, Plaintiff asserts that Defendants Wren, Sanchez, and Cassio seized his tablet without his permission and converted it to their own personal use.  (*Id.* at 22.)  Finally, in Claim Seven, Plaintiff states that Defendant Cassio, in "in conspiracy and in complicity" with Defendants Canteen Supervisor and Union Supply, falsely advertised the tablet.  (*Id.* at 24.)

Plaintiff's state law claims are devoid of any allegation that the defendants' alleged actions or inactions were willful and wanton, and Plaintiff fails to allege any of the defendants' states of mind at the time they acted or failed to act.  (*See* Compl at 21, 22–24.)  Rather, in an attempt to salvage his state law claims, Plaintiff's argues for the first time in his response that the defendants' actions were willful and wanton.  (*See* Resp. at 21.)

Thus, Plaintiff's state tort claims asserted against Defendants Bustamante, Hansen, McClean, and Canteen Director[5] should be dismissed under the CGIA for failure to state a claim for which relief can be granted.[6]

## E.    *Federal False Advertising Claim*

In his Claim Seven of his Complaint, Plaintiff alleges "Federal . . . Claims of Violation of Commercial Codes, and Intentional False Advertising for Personal and Corporate Monetary Gains and/or Profits."  (Compl. at 24.)  Plaintiff does not state under which federal statute he

---

[5] There is no dispute that Defendant Canteen Director is a CDOC employee.

[6] Defendant Union Supply appears to be a private corporation.  Thus, the court cannot recommend dismissal of Plaintiff's state false advertising claim (Claim Seven) asserted against this defendant on the basis of CGIA immunity.

asserts his false advertising claim; however in his response, he clarifies that his "federal law false

advertising claims are pursuant to 15 U.S.C. § 1125(a)(1)(B), and the Lanham Act."

> The section of the Act imposes civil liability on any person who
>
> uses in commerce any word, term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or misleading description of fact,
> or false or misleading representation of fact, which . . . misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(B).  However, the Supreme Court recently has held that in order for a

plaintiff to have standing to assert a false advertising claim, he must "come within the zone of

interests in a suit for false advertising under § 1125(a)." *Lexmark Intern., Inc., v. Static Control

Components, Inc.*, ___ U.S. ___, 134 S.Ct. 1377, 1390 (2014).  A private remedy is available

only by those who "allege an injury to a commercial interest in reputation or sales.  A consumer

who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact

cognizable under Article III, but he cannot invoke the protection of the Lanham Act." *Lexmark*,

1324 S. Ct. at 1390.  A consumer misled by a supplier into purchasing an inferior product is "not

under the Act's aegis."  134 S. Ct. at 1390.  "[A] plaintiff suing under § 1125(a) ordinarily must

show economic or reputational injury flowing directly from the deception wrought by the

defendant's advertising; and that that occurs when deception of consumers causes them to

withhold trade from the plaintiff."  *Id.*  "This principle reflects the Lanham Act's purpose of

" 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair

competition.' "  *Id.* at 1389.

> Here, Plaintiff fails to allege, and likely could not allege, that any trade was withheld

from him or that his claims fall within the zone of interests for a false advertising suit.  Rather,

Plaintiff is a plaintiff who feels he was "hoodwinked into purchasing a disappointing product." Thus, Plaintiff has no standing to assert a false advertising claim under the Lanham Act. Plaintiff's Claim Seven asserted against Defendant Cassio, Canteen Director, and Union Supply should be dismissed.

### B.      *Qualified Immunity*

Qualified immunity is an affirmative defense against 42 U.S.C. § 1983 damage claims available to public officials sued in their individual capacities. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects officials from civil liability for conduct that does not violate clearly established rights of which a reasonable person would have known. *Id.* As government officials at the time the alleged wrongful acts occurred, being sued in their individual capacities, the defendants are entitled to invoke a qualified immunity defense to Plaintiff's claims. *See id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (noting that police officers were "government officials – entitled to assert a qualified immunity defense"). In resolving a motion to dismiss based on qualified immunity, a court looks at: "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part. *Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Where no constitutional right has been violated "no further

inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

Here, the court has determined Plaintiff has failed to state a claim for any constitutional violation. As such, the defendants are entitled to qualified immunity.

**C.      Diversity Jurisdiction**

As the court noted *supra*, it cannot recommend dismissal of Plaintiff's state false advertising claim (Claim Seven) asserted against Defendant Union Supply on the basis of CGIA immunity. Therefore, this state claim is the only remaining claim.

The federal courts have an independent obligation to determine whether subject matter jurisdiction exists. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Because federal courts are courts of limited jurisdiction, there is a presumption against its existence. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A federal district court may therefore raise the objection that it lacks jurisdiction on its own initiative at any stage of the litigation. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *see also McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988) ("The issue of subject matter jurisdiction may be raised *sua sponte* by the court at any time during the course of the proceedings.").

In his Complaint, Plaintiff asserts jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1332. (Compl. at 4.) The court has recommended dismissal of Plaintiff's § 1983 claims. Thus, this court must determine whether it has diversity jurisdiction under § 1332. A plaintiff properly invokes § 1332 jurisdiction when he presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *See* 28 U.S.C. § 1332(a); *see also*

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).   Assuming that Plaintiff is, as he alleges, a citizen of Michigan[7] (*see* Compl. at 4), and that Defendant Union Supply is, as Plaintiff also alleges, a citizen of California (*see id.* at 3), then the question is whether Plaintiff satisfies the required jurisdictional amount.

The plaintiff's claim regarding the amount in controversy is presumed to support diversity jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1294, 1289 (10th Cir. 2001). However, a conclusory allegation that the amount in controversy exceeds $75,000, without anything else indicating that this might in fact be so, is insufficient to establish federal court jurisdiction. *See*, *e.g.*, *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1182 (10th Cir. 2000).   "Merely asserting an amount in controversy equal to the minimum sum required does not entitle [plaintiff] to sue in federal court.  He must allege sufficient damages to assure the district court that the jurisdictional requirement has not been 'thwarted by the simple expedient of inflating the complainant's *ad damnum* clause." *Gibson v. Jeffers*, 478 F.2d 216, 221 (10th Cir. 1973).

In this case, as relief from Defendant Union Supply, Plaintiff seeks "General/Punitive/Compensatory/Nominal Damages in an amount in excess of $400,000 for all federal and state law claims combined."  (Compl. at 29, ¶ 4.)  However, Plaintiff has not quantified his claims.  Plaintiff's conclusory allegation that the amount in question exceeds $75,000 is insufficient.  In a recent case in this Court, District Judge Brook R. Jackson noted that a *pro se* plaintiff's request for relief in the amount of $10 million in damages does not satisfy the

---

[7] " 'Because domicile is a voluntary status, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state.' " *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2009) (quoting *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991)).

requirements for diversity jurisdiction.  *Haskett v. Flanders*, No. 13–cv–03392–RBJ–KLM, 2015 WL 440512, at *5 (D. Colo. July 20, 2015).  As Judge Jackson noted, if it were sufficient, "then a plaintiff (or defendant removing a case) could always acquire a federal forum merely by alleging a big number, no matter how divorced from reality it might be."  *Hackett*, 2015 WL 440512, at *5.  Plaintiff's claim for relief against Defendant Union Supply appears to be "divorced from reality."

Thus, because Plaintiff has failed to satisfy the requirement that his claim against Defendant Union Supply exceeds the required jurisdictional amount, Plaintiff's state false advertising claim asserted against Defendant Union Supply should be dismissed without prejudice for lack of jurisdiction.[8]

**WHEREFORE**, for the foregoing reasons, this court

**RECOMMENDS** that Defendants Wren, Sanchez, Hansen, McClean, Bustamante, and Cassio's "Motion to Dismiss" (Doc. No. 25) be **GRANTED**, and that the claims against Defendants Wren, Sanchez, Hansen, McClean, Bustamante, Cassio, and Supervisor or Director of the Colorado Department of Corrections Inmate Canteen Services or Industries should be dismissed.  The court further

---

[8] This court issued an "Order to Show Cause" on March 1, 2016, requiring Plaintiff to show cause in writing why his claims against Defendant Union Supply should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for lack of service.  (*See* Doc. No. 40.) Plaintiff filed a response on March 10, 2016, in which he provided an address at which the defendant could be served.  (Doc. No. 42.)  Because the court recommends dismissal of the remaining claim against Defendant Union Supply for lack of jurisdiction, it is unnecessary to serve this defendant at this time.

**RECOMMENDS** that the remaining state false advertising claim asserted against Defendant Union Supply Media/Union Supply Group Board of Directors and Share Holders be dismissed without prejudice for lack of jurisdiction.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52

F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 16th day of August, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge